Call the next case for argument. Case number 21-3514, Eastern Missouri. Allison Dreith v. City of St. Louis, Missouri, et al. Very well. Ms. Duncan, we'll hear from you first. Good morning. May it please the court. The Supreme Court has developed a functional approach to immunity law. Under that approach, the court examines the nature of the functions with which a particular official has been lawfully entrusted and seek to evaluate the effect that exposure to a particular form of liability would likely have on the appropriate exercise of those functions. At issue in this appeal are immunities of various sorts. We've got qualified, official, and sovereign. A functional approach to these immunities demands that the lower court's order be reversed in that, number one, Two, defendant Boyer is entitled to official immunity on plaintiff's claims in that his actions were discretionary and plaintiff cannot and has not been able to put forth any evidence that his actions were done with bad faith or with malice. And third, the city is entitled to sovereign immunity on plaintiff's state law claims as plaintiff has failed to establish that the city has procured insurance for her claims. First, defendant Boyer is entitled to qualified immunity on plaintiff's First Amendment claims because his actions were objectively reasonable under the circumstances. Now, in an arrest setting, it is well established that officers are entitled to qualified immunity on First Amendment claims if they have at least arguable probable cause to make an arrest. Arguable probable cause is a mistaken but objectively reasonable belief the suspect committed a criminal offense. Now, while there is no arrest here of plaintiff, the objectively reasonable standard used for arrests is substantially similar to the one used for incidences of force. For example, in Carpenter v. Gage and Kukla v. Holm, we are told that the test for use of force is whether the force was objectively reasonable under the circumstances, relying on the perspective of a reasonable officer present at the scene rather than the benefit or rather than 20-20 vision of hindsight. In applying this objectively reasonable standard to Boyer's force under the circumstances, the lower court correctly found that Boyer was entitled to qualified immunity on plaintiff's Fourth Amendment claims. And the circumstances as outlined in the district court order and throughout the record shows that the BRT squad, the bike squad of the city police department, was ordered to help evacuate some CDT buses that were surrounded by violent protesters. Objects were being thrown at officers, rocks, water bottles, etc.  And as the BRT, as the bike officers were trying to get to the buses to relieve them, the plaintiff was standing close to officers and grabbing one's bike. Is there any dispute about that point, about the grabbing of the bike? There is not, Judge. Now, in the Statement of Uncontroverted Facts, the lawyers dispute that. But when you look at what they point to for evidence of that dispute, they point to the deposition of Dreeth, the plaintiff, and then they point to an affidavit or testimony by her in a different case. And in both of those circumstances, there's no direct contradiction that she was not grabbing a bike. In fact, in her deposition, she says that she doesn't remember why she was standing so close to the bike. Now, she does say something. I think this is the case. The two cases are a little confusing when they're together. But I think she says, I didn't break the law, or I was completely complying with the law. And I'm just wondering, I suppose you could grab the bike without breaking the law, so there's no inherent inconsistency there, but I wanted to ask you about that. Well, again, we would say that that's not a direct dispute of fact then. That could mean any number of things to her. She's not an expert on the law. She's just a regular person. So what she means by that, I think, is vague. Suffice to say, she has not disputed this fact that Boyer saw her grab the bike. So under Iqbal and Twombly, at least there's an argument that this is a legal conclusion, not really a factual statement that she made. We would argue so. What did Judge Hamilton say about that? About the grabbing of the bike? Yeah. She ruled that that was a disputed fact. So don't we have to take that as a given for purposes of appellate review? So the record is viewed in light, most favorable to the non-movement. And we would agree with that. However, again, Judge, when you look at the evidence that's being cited, when you look at the- No, I get that point, but I'm saying I don't think on a qual- Well, it's a de novo review. It's a de novo review, but if you know Johnson against Jones from the Supreme Court limits what can be reviewed in a qualified immunity appeal to purely legal questions as opposed to what it called evidence-sufficiency questions. And I'm just worried that I'm wondering whether what you're arguing now is an evidence-sufficiency question. There's not enough evidence to support the assumption that she was not grabbing the bike. And if we're- Anyway, that's the concern. Sure, and I appreciate that. And again, we would say that this isn't evidence-based and that there is no evidence that she would dispute the fact that she was grabbing the bike. And to the extent that you do review this case, it is de novo taking into account the record as it was before the district court. Well, let's say she was not grabbing the bike. Then do you think that there would be no qualified immunity at that point? Does it really come down to the bike grabbing? That is a pivotal point. However, I think even despite that, Judge, we get to qualified immunity on defendant Boyer's actions if for no other reason than it was not clearly established at the time that his action, although valid under the Fourth Amendment, would not be valid under the First Amendment. What behavior would have- I know you're arguing for arguable probable cause, but I'm trying to get at what behavior would have justified the pepper spray if we assume that there was no grabbing of the bike? So when looking at qualified immunity, the entire context of the situation is taken into account. And so in this situation, we have one in which a woman is approaching bike officers. It is known to Boyer at the time that there have been people fighting with officers. She engages with them. And on the basis of that, of her being- and she admits that she's incredibly close to police officers when they're trying to get people to back up. Her refusal to do that, I think, allows arguable probable cause for Boyer to spray her. So noncompliance with requests slash orders of the police officers. Right. So in this case, we are asking the court to adopt a rule that the use of force by a police officer should be evaluated for objective reasonableness. And if the action is objectively reasonable, a First Amendment retaliation claim cannot stand, as the court has ruled in Graham v. Connor, Nevis v. Bartlett, and Hartman v. Moore. I alluded to this prior, but in any event, Boyer is entitled to qualified immunity where it was not clearly established that his objectively reasonable force, under the circumstances presented here, could violate the First Amendment. Now on this point, the plaintiff points to several cases, two of which were not enacted at the time of Boyer's use of force. They point to Burbridge, and they also point to Koreshi, which is a 2021 case. And in both of those, while it was allowed that the First Amendment case claim move forward, despite qualified immunity being given on the Fourth Amendment claim, those were not at issue and did not give Defendant Boyer a heads up. He was not put on notice of that until these cases were enacted in 2021. The only case that could possibly be considered to establish any kind of law would be Peterson v. Kopp that they cite. But even in that case, those circumstances do not fit squarely into the circumstances that Defendant Boyer encountered that day, which it must under qualified immunity. And even under the subjective analysis, there's no evidence that Boyer's pepper spray was motivated in any way by plaintiff's First Amendment activity. In the record, the plaintiff points to nothing other than the pepper spray itself to show that there was any kind of motivation. And this is insufficient, as it is merely speculative that there was anything, any other motive behind that pepper spraying. I think it's important to point out at this juncture that Boyer was at a protest. He's surrounded by protesters. There are hundreds of people there that day. And according to plaintiff, plaintiff admits that he only enacted pepper spray against five or six people there. So this shows that there was an individualized use of force, that it was discretionary based on what the individuals were doing and not some widespread animus on behalf of Defendant Boyer against those protesting that day. Defendant Boyer, secondly, is entitled to official immunity because his use of force was discretionary. And plaintiff has not and cannot put forth any evidence that his actions were taken in bad faith or with malice. Under Missouri law, public officials acting within the scope of their authority are not liable for torts arising from their discretionary acts unless they act in bad faith or with malice. It is black letter law that an officer's decision to use force in the performance of his duties is discretionary. So in order for plaintiff to overcome the official immunity that Mr. Boyer is entitled to, they have to show that he acted with bad faith or with malice. And this kind of goes back to what I argued prior, that there is no evidence that there was any kind of bad faith or malice on behalf of Mr. Boyer in his actions towards the plaintiff. Finally, the city is entitled to sovereign immunity on plaintiff's state law claims as plaintiff has failed to show any evidence that the city procured insurance for her claims in this matter. Sovereign immunity is tort protection for government entities. It is the rule, not the exception. But having said that, there are limited exceptions to it. And one such exception is found in RSMO 537.610, which provides that a sovereign immunity is waived only to the maximum amount of and only for the purposes covered by any insurance policy. And in such amount or for such purposes provided by a self-insurance plan duly adopted by the governing body of any political subdivision of the state. So here in the city of St. Louis, our governing body is the Board of Aldermen. They have adopted a self-insurance plan, but it is specific only to the dangerous condition of public property or the negligent operation of one of our employees in a motor vehicle. So under these facts, there is no waiver of sovereign immunity. The city is entitled to it. And I would point the court to the Hendricks case, which is an appellate court directly on point in this matter. On nearly identical facts, on a nearly identical record to the one at issue here, the Missouri Appellate Court found that the PFPC, which is the Public Facilities Protection Corp that the plaintiffs are arguing serves as our insurance in this case. The Missouri Appellate Court ruled that that was not so. What about Artora's decision? I think we relied on that Missouri Court of Appeals decision where we said much the same thing arising out of a St. Louis protest case. Are you familiar with that case? Not off the top of my head, Your Honor. I apologize for that. Is there a final order, though, on this issue that's appealable? I thought Judge Hamilton didn't rule on it and said she wanted to get briefing or oral argument or something. Right. So she reserved argument on that, Judge. Why would we have jurisdiction then to rule on it? Because the Supreme Court has consistently said that resolving immunity questions should happen at the earliest possible stage of litigation. That's true, but maybe that means the district court should promptly resolve it so that there would be an order on it that could be appealed. Anyway, that's the concern I had on that. Would you like to save the balance of your time for rebuttal? I would. Thank you. Very well. Thank you. May it please the Court. All right, Mr. Price, we'll hear from you. My name is Omri Price. I'm here on behalf of the appellee, Alison Drath. We're here on a denial of a motion for summary judgment on qualified immunity, and I think the Court's already referenced the standard review. In Wheeler, just a year ago, the Eighth Circuit, and I quote, said, a defendant challenging the denial of a motion for summary judgment based on qualified immunity must be prepared, and this is the key language, concede the best view of the facts to the plaintiff. Unfortunately, in this interlocutory appeal, I apologize. I didn't do that. No, I don't think it was your fault. Go ahead. I think in this interlocutory appeal, as has happened in several others, I think the city just doesn't want to accept the facts and concede the facts in the light most favorable to the protesters. This Court cannot accept Lieutenant Boyer's version of the underlying facts. The Court has said that in many cases, Quirashi, it said it in Burnicle. Repeatedly, this Court recognizes that in this context, on an interlocutory appeal from the denial, it's the version of facts from our party, the plaintiff. There's two examples of it. In their brief, they say that Lieutenant Boyer pepper-sprayed Mrs. Drath during a, quote-unquote, a chaotic mass protest, and they continue saying that protesters were engaged in assaultive and dangerous behavior. This is in their brief at pages 2 to 4 and pages 9. I would ask the Court to look carefully at the picture at page 7 of our brief. In that picture, and there's a reason we picked that picture, it's taken literally moments after Ms. Drath, who is covering, you could see her in the center of the picture with her hands up after she got pepper-sprayed. This is seconds afterwards. If you look at that picture, it doesn't seem chaotic. It doesn't seem like anybody's engaged in assaultive or dangerous behavior anywhere in the vicinity of where you see on the right side, Lieutenant Boyer pepper-spraying another individual. And I would ask you to look at some of the picture carefully. As I say, a picture is worth a thousand words. I could write all this in a brief, but if you look, there's one woman with a headscarf. She is literally maybe eight feet from where Lieutenant Boyer is pepper-spraying somebody else. She is oblivious to the whole thing. So are the two officers standing there. There's an officer right next to Lieutenant Boyer who has no idea that's happening. To suggest that this was a chaotic scene and assaultive behavior by people, you would think it would be a lot of people throwing things and acting in such a manner. Well, I don't know that there was assaultive behavior, but the district court in its order, again, taking the facts, said that the protesters surrounded the bus and that there were empty water bottles being thrown at the buses. I think that's undisputed. It's undisputed, but my point is at the scene where this is happening, at that instant, maybe, you know, 100 yards away something is happening, but here where Lieutenant Boyer, for whatever reason now, and that's the question, it's for a jury to decide why did he choose, when people are just standing there protesting, to pick on Mrs. Drath and other individuals, five to six individuals. Our argument is he was upset that day, he was frustrated, and he took it out at these protesters for engaging in their First Amendment rights. And that's a question for a jury to decide. My point is this contradicts Lieutenant Boyer's assessment of the facts at the moment when he's pepper-spraying Allison Drath. And that's the point I wanted to make is, again, you have to concede the facts in the light most favorable to us and not in his view. It's interesting. So what is the district, what's your understanding of the district court's assumption about the interaction between Drath and the bicycle? Again, I think, I'm not sure, I think it was you who asked, but there is actually. I asked about it. Yeah, you asked about it, and it is disputed. It's clearly an evidentiary question. But does the judge say that she didn't grab the bike in her version? She points out specifically that he says, Lieutenant Boyer, he saw a plaintiff put her hand on one of the BRT officers' bicycle. She never admits this. And in a footnote, the court says the plaintiff counters that the protester did not grab officers' bicycles. I see. And she cites to the record on that. So I think it is a disputed fact, and you could not, for purposes of this appeal, assume that she was doing anything that would even remotely give her. Which footnote is that? I missed that. Footnote one. Oh, that would be. Now, we might be stuck with that fact, but I'm wondering if there really is support for it. And maybe we don't get there. Maybe we don't get there, but I'm going to ask the question anyways, which is it doesn't appear there's a direct contradiction. She doesn't admit it, and I know you were careful, but she doesn't dispute it either. But, again, I don't think you, for purposes of this appeal, you can't assume that fact as being true. That's what I would argue. And also, as the court noted for intellectual appeal, on issues of disputed fact, you don't even have jurisdiction. You have to accept the fact as presented by the plaintiff. I think it's interesting. I would argue, just on summary, the facts, as she puts forth and we put in our brief, are that immediately before the incident in question, Ms. Drath did not witness any demonstrators damaging property, throwing objects at the police, threatening anyone's safety, or attempting to stop the police from moving. That's in her brief, and it's cited to the record. Those are the facts. And then she alleges that, without warning, Lieutenant Boyer blasted pepper spray directly at her face. In a nutshell, those are the operative facts for purposes of this appeal. Now, what I find interesting is, in their brief, they spent a great deal of time arguing, first of all, that probable cause inquiry is not applicable because they argue that she has to demonstrate four factors, including lack of probable cause. And they cite Peterson for it. It was barely mentioned today. I'm not going to spend much time on it. I just want to emphasize that the Peterson case specifically refutes their argument, and the court in Peterson, after identifying the three standard elements that apply in the classic First Amendment case, says, and I quote here, in retaliatory arrest cases, we have identified a fourth prong, lack of probable cause or arguable probable cause. So, clearly, the probable cause inquiry does not apply in this case because she was not arrested. It only applies in cases of First Amendment where the person is arrested. So that whole analysis, and Peterson proves that, because in Peterson, the Eighth Circuit specifically found that, with respect to the First Amendment retaliatory arrest claim, qualified immunity applied because there was probable cause. Have we actually decided? I actually looked at some of those cases. I understand the implication, the inference you're drawing. Yep. But I wonder if we've actually ever come out and said, in this type of case, a use of force case, probable cause or arguable probable cause is not an element. I'm not sure I found a case expressly stating it, but I'll tell you, if you look at the Burbridge case that I know Judge Calton and Wolman are familiar with, you look at the facts in that case. The district court found that the police officers were qualifiably immune from a claim of retaliatory arrest because they had at least arguable probable cause. The district court then continued to say that that wasn't the only issue. There was also the adverse action was not just arrest but the use of force. So the district court held the police officers were not entitled to summary judgment on the separate and distinct retaliation claim relating to their use of force in the context of the First Amendment. When that was presented to the Eighth Circuit, this court stated that they affirmed the denial of qualified immunity with respect to the First Amendment retaliation claim because, and I quote, the adverse action was use of excessive force, not arrest. To answer your question, I think that's as close as the Eighth Circuit has said, that there's a distinction whether we're talking about a First Amendment retaliatory arrest in which probable cause inquiry applies versus just a First Amendment retaliation based on use of force without arrest. Speaking only for myself here, I mean, the thing about it is you have the same sort of causal problem in both cases. I mean, we're not in the Fourth Amendment. We're in the First Amendment. But the fact of the matter is use of force is like a seizure. That's how you analogize it. And arguably, if you have probable cause or arguable probable cause, there's an alternative explanation for your use of force other than the First Amendment. And so I wonder why you think it doesn't apply. I'd say the Supreme Court's decision in Neves is the best answer to it. If you go through that opinion carefully, and that's where the Supreme Court added basically said that retaliatory prosecution and retaliatory arrest in the First Amendment are similar and added the fourth prong. It did so because of the unique causation issues associated in prosecution and arrest cases, the decision to make the arrest, the decision to make prosecution. It added that element. In the case of a First Amendment case, if I have an officer who just comes and blasts someone and doesn't arrest, I don't have that element of arrest and probable cause inquiry relevant. Do you think arrest is really the issue, or is it more whether there's a seizure? I mean, they're used sometimes interchangeably. But I thought the point here was that the district court said there was no seizure because it was a dispersion. Right? Is that right? That's what I understood as well, yes. So if there were a seizure, then probable cause would seem to be important. Even if it wasn't an arrest. I'm not sure how to answer it. My reading of Neves is that the arrest was the foundation for the court's distinction more than the seizure. Well, the point is the seizure. Anytime there's a seizure, it brings up the question whether there was adequate cause for the seizure. If I may move ahead to some of the other arguments. I would just say on this issue that even assuming there's a fourth element and the court concludes that it should add, I would argue consistent with Qureshi, this case in a similar context, if the facts, if you don't presume the facts as Lieutenant Boyd would like you to do, but view the facts in the light most favorable to our client, I don't think you can establish an arguable probable cause in this situation. Again, going back to the bike issue and taking the facts in the light most favorable. Probable cause of what? You mean an offense? That she was committing an offense? Yes. Now I want to really focus on this whole argument that seems to become front and center of their argument, and that's this standard of objective reasonableness, about applying basically the Fourth Amendment in the context of a First Amendment. I first argue that this court shouldn't consider that argument because they're relying, I think the statement that they have is, and this is in their reply brief at page seven, they say that this court should adopt, and I quote, a new rule that any use of force by a police officer must be evaluated for objective reasonableness. You know, if you go to the district court, there are briefs to the district court. They cited Neves. I could only find one time without any discussion. It was a sentence. It wasn't, they didn't develop the argument at all, and the district court never had an opportunity to consider this argument. And, again, I think Burbridge is relevant here because in that case, and this follows Judge Holtzman's, your concern on sovereign immunity issue, the court stated because we like the benefit of the district court decision and reasoning on these issues, in our discretion we decline to consider them on the first time on appeal. Well, my point was a little different, actually. I'm questioning whether we even have jurisdiction if there's no order. If there's no order, but even beyond that, it's an issue that was never presented to the district court, and they're now making an argument for the first time. But I think their argument is, I mean, again, they put all their eggs in one basket, and it's a Supreme Court decision, Neves, basically suggesting adopt a new rule for the first time ever, suggest that any time in the Fourth Amendment you look for objective reasonableness, let's apply that same standard in the First Amendment and basically change the law in the First Amendment forever. That's what they're asking, and I would argue Neves doesn't even come close to supporting them. On the sovereign immunity issue, just because it came up, you may have been going there anyways, but doesn't Torres, I mean, you may not be familiar with it either, doesn't it kind of foreclose the issue, at least if it's before us? You know, it's going to be an interesting question. I think Torres is definitely a very instructive case. I think we have additional evidence in this case that when presented to the district court may convince Judge Hamilton that the facts, the evidence that we've adduced is different than what was presented in the Missouri case and that the court of Eighth Circuit considered in Torres. Again, that's an issue that we were going to present to Hamilton, give her an opportunity to rule on it, and it will come back to you. Judge Hamilton. Judge Hamilton, yes. Has the case proceeded since the order? There's no stay in effect or anything? I believe nothing. Well, you would know, wouldn't you? Oh, there is a stay? There is a stay. I just wanted to confirm that. I see. Okay. But on the reason why we did Torres the way we did, I was on the panel for that, I think the opinion comes out and says the problem is you have no vote from the Board of Aldermen, and I don't think you have evidence that that fact is wrong? No. Okay. I think Torres is very much instructive. Okay, fair enough. I'll leave that alone. Yes. I'd like to go back to their reliance on Neves because it is cited repeatedly, especially in their reply brief, in support of this new rule they are asking this court to adopt. You know, Neves, and I quote, was addressing a very narrow question, and the Supreme Court stated, we are asked to resolve whether probable cause to make an arrest defeats a claim that the arrest was in retaliation for speech protected by the First Amendment. This was the case that raised the issue of the fourth prong in First Amendment retaliatory arrest cases. The Supreme Court answered that question in the affirmative. The decision was limited solely, and I emphasize this, to First Amendment retaliatory arrest cases. It looked, and only in a situation where there's arrest did the court say we need to add, there's a reason to add this additional element to address the unique causation issues that the Supreme Court felt were relevant. What if the police say, these people are all committing crimes, but we don't have the resources to arrest them all, so we're just going to undertake a dispersion exercise to try to clear the area, but we're going to, in our discretion, not arrest them. Why wouldn't that be a case that might call for inquiry into reasonableness? Again, that's an issue that was never presented to the Supreme Court in Neves. I don't think the Supreme Court opinion is expanded beyond that. No, I'm talking about the proposed new rule. Oh, the proposed new rule? Yeah, if there's criminal activity ongoing, but the police don't make a seizure, but they use force. And that may apply with respect to the Fourth Amendment claim, if those individuals have a claim of seizure, which would be a challenging claim maybe, but it does not apply to the First Amendment because the First Amendment has separate and distinct elements, and there isn't an element that requires it. The First Amendment is all predicated on this issue of causation. There is a causation requirement that has to show that Ms. Dries was simply protesting that day and without doing anything to violate the law was pepper sprayed. I think causation is an easy argument here, contrary to what the opposing counsel said. There was no other justification other than he was pissed off she was protesting and exercising the First Amendment. He was upset. You mean he was upset. That's our position. Okay, your time has expired. Thank you very much for your argument. All right, Ms. Duncan, we'll hear from you in rebuttal. Thank you. Judges, just very briefly I wanted to talk about in the light most favorable to the plaintiff, and they are correct that that is how the record is viewed. However, when there is video evidence of the circumstances of a use of force or of the circumstances that led to the use of force, then the court can take that into consideration and did in fact in their analysis of the Fourth Amendment. It's important to note as far as qualified immunity is concerned that it was not clearly established under the circumstances of this case that objectively reasonable force under the Fourth Amendment would not be valid or would warrant a continued First Amendment claim. It is well known that the facts of qualified immunity have to fit squarely into the facts at issue. And they've been able to cite and continue not to be able to cite to any case that would have given Defendant Boyer a heads up that his objectively reasonable use of force under the Fourth Amendment would not be valid or would allow a First Amendment claim to continue. And finally on this waiver issue, I would point only to the fact that we did raise this objectionable reasonable test at the record at 7-16 and 7-17 and that to the extent that the court finds that we have not presented it to the lower court, we maintain that it is a pure legal question and therefore that the court can take it up. Thank you. I see my time has expired. Did the district court conclude that the use of force was reasonable? Or are you just arguing that we should conclude that it was? They argue that qualified immunity was granted on the Fourth Amendment claim because there was... No seizure. I thought that was because there was no seizure. Not because the force was reasonable, but just that there was no seizure that would trigger Fourth Amendment inquiry. That was part of it. So if we were going to rule for you on this reasonableness theory, we'd have to address that. We'd have to both add the fourth prong to the analysis under the First Amendment and we'd have to address whether the use of force was reasonable here. We believe that... Is that right? Go ahead. I believe so. I believe so. And why would it be reasonable if we take the facts according to drive? Well, that gets into what we spoke about initially, which is that there is no record to dispute that she was grabbing the bike. I see. So back to the bike. Okay, thank you very much for your argument. The case is submitted and the court will file a decision in due course. Thank you to both counsel.